## DORMAN *v.* McFARLAN.

[87 South. 275, No. 21565:]

1. MORTGAGES. *Arrangements to have third party pay indebtedness at bank held insufficient as legal tender.*

    Where a party seeks an injunction against a foreclosure under a deed of trust on the ground that he has made a legal tender of the amount due, proof showing that he had stated to the owner of the indebtedness that he was ready to pay it if the owner would go to a named bank and wait until the following morning, and the proof further showing that he did not have the money in the bank in his name, but had merely arranged with a third party to get the money, is insufficient to constitute a legal tender. In order to make a valid legal tender, the party must be ready then and there to pay the money if his offer is accepted.

2. BILLS AND NOTES. *Maker reacquiring note not entitled to attorney's fee as against third person assuming payment.*

    Where a party executed a promissory note providing for the payment of an attorney's fee in case the note is placed in the hands of an attorney for collection, and afterwards makes a contract with another person to pay the indebtedness evidenced by such note, the agreement to assume being silent as to attorney's fee; and where the party at maturity of said notes arranges for delay in the payment with the holder; and where the original maker in order to protect his own interest reacquires his notes and demanded payment, which is not made, and places the

notes in the hand of an attorney for collection, which attorney refuses to accept payment of principal and interest unless an attorney's fee is also paid—the owner cannot, under the circumstances stated in the opinion, recover an attorney's fee on said note.

APPEAL from chancery court of Sunflower county.

HON. E. N. THOMAS, Chancellor.

Suit by A. D. McFarlan against Frank C. Dorman. Decree for complainant, and defendant appeals. Reversed and remanded.

See, also, 86 So. 267.

*Alfred Stoner,* for appellant.

When Mr. McFarlan bought the land, and assumed payment of Klump's notes to Kaplan, he thereby took upon himself the obligation of paying the notes according to their tenor and effect. In Jones on Mortgages (7 Ed.), sec. 749, it is said:

"There is an implied promise on the part of the purchaser to pay the mortgage when it is due, or, if it be already due, to pay it forthwith, or within a reasonable time, and the burden of proof is upon the purchaser who has assumed a mortgage, and claims that he has performed his obligation to show that he has done so." To same effect, *Furnas* v. *Durgan,* 119 Miss. 500, 20 Am. Rep. 341; 27 Cyc. 1347, also *Eppes* v. *Thompson* (Ala.), 79 So. 611, (paragraphs 1-3 of opinion); *Olsen* v. *Sortedahl* (Iowa), 121 N. W. 559; *Dargan* v. *McSween, et al.,* (S. C.), 11 S. E. 1007.

Klump certainly had a right to insist on the performance of the contract. As was said by the Massachusetts court in *Loche* v. *Homer,* 131 Mass. 93; 41 Am. Rep. 199. This court in quoting from Chancellor KENT, stated: "We should pervert the plain sense and language of the agreement entered into by the grantee, if we should turn it into a mere promise to indemnify the grantor, when it was evidently a promise to pay the mortgage debt for and in-

stead of the grantor.  The grantor was not bound to go and pay that debt, or have it recovered from him by due course of law, before he could resort to the grantee.  He was not bound to subject himself to such previous suit or inconvenience.  The grantee had agreed to go and pay his debt for him, that is, to go and pay the debt as it became due."  See, also, *Stout* v. *Folger,* 34 Iowa, 71, 11 Am. Rep. 138.

How now, then, can McFarlan say that when the notes were placed in the hands of an attorney for collection it was not done fairly.  When Klump wrote McFarlan to go and pay the assumed notes that was that much more than the law required of him.  But more than that, Klump sent an agent at a great expense to see Mr. McFarlan, but Mr. McFarlan refused to perform the contract, and Klump went to see McFarland himself and McFarlan still refused.  In 27 Cyc., page 1359, we find the following statement of the law:

"If the vendor has been compelled to pay the mortgage debt in an action to enforce his original personal liability for it, or to pay a deficiency arising from a foreclosure sale, he may maintain an action against his vendee, on the latter's assumption of the mortgage, as for money paid, or he may take an assignment of the mortgage and enforce it against the vendee for the same purpose, but it seems that he cannot make the vendee his debtor by a merely voluntary or officious payment of the mortgage debt without giving the latter an opportunity to pay it."  See, also, *Abell* v. *Coons,* 7 Cal. 105, 68 Am. Dec. 229, *Rice* v. *Sanders,* 152 Mass. 108, 23 Am. St. Rep. 804.

Again we find in 27 Cyc. 1359: "It is generally held that an action accrues in favor of the mortgagor immediately upon breach of the agreement, that is, upon the purchaser's failure to pay the mortgage at maturity or within a reasonable time thereafter, even though the mortgagor has not himself paid it, the agreement being considered an absolute obligation to pay or satisfy the mortgage."

We submit that the assumption of an indebtedness has always been considered an absolute obligation to pay and discharge the indebtedness assumed in this state, since the decision of *Lee* v. *Newman,* 55 Miss. 365. Granting for argument's sake that a demand on McFarlan with notes in hand would ordinarily be necessary, in this case McFarlan comes in point blank of two clauses of our Uniform Negotiable Instruments Act. Section 2660, Hemingway's Code, is as follows: "Presentment for payment is dispensed with: (1) Where after the exercise of reasonable diligence presentment as required by this act cannot be made; (2) Where the drawee is a fictitious person; (3) By waiver of presentment, express or implied." (Laws 1916, chap. 244.)

. Now, the notes themselves waived presentment, expressly granting all that we have said about the demands to be untrue. "Granting truth to be a liar, that is, that Mc-. Farlan was not obligated to seek the holder and pay the notes, and that the notes did not on their faces, waive presentment, then under clause 1 of the said section 2660, presentment was excused after Klump bought the notes over and took an assignment of them, because McFarlan knowing that Klump had come to his home town, Drew, for the purpose of settlement, took the train for Clarksdale, says the statute presentment is dispensed with (1) where after the exercise of reasonable diligence, presentment as required by this act cannot be made.

The notes having been properly placed in the hands of Mr. Dorman for the enforcement of payment of a part of Mr. Farlan's purchase money, Mr. Klump had a right to demand attorney's fees. It was Mr. McFarlan's fault that it became necessary to place the notes in the hands of an attorney for collection, and his liability extended to the attorney's fee provided for in the notes. 27 Cyc., 1355-1356-1347; also *Eppes* v. *Thompson* (Ala.), 79 So. 611, and authorities above cited.

*J. W. Thompson,* for appellee.

The question, the sole and only question on which this matter was brought into court for adjudication was whether or not there was a *bona-fide* effort on the part of McFarlan to discharge the indebtedness in time to prevent the attachment of attorney's fee, subsequent interest, and subsequent expenses and cost, and whether such efforts were sufficient in the eyes of the law.

"Tender," so says 38 Cyc., 131, "is an offer to perform a contract, or to pay money, coupled with a present ability to do the act." *Smith* v. *Lamb,* 26 Ill. 296, 79 Am. Dec. 381. But tender as it affects the mortgage, so it is held, must go further than a tender on an ordinary contract. 27 Cyc. 1406, p. 2.

A tender of payment of performance of a mortgage, to be effective, must be open, fair and reasonable, so clear as to leave no doubt of the intention to satisfy and discharge the mortgage. *Darling* v. *Chapman,* 14 Mass. 101; *Wesling* v. *Noonan,* 31 Miss. 599. McFarlan did offer to pay, and his offer was coupled with the ability to do the act, and it was fair, open, and reasonable, and there was no mistake of his intentions to discharge the mortgage.

It is quite true that, the money was not counted out. It would have been a rather unusual proceeding in this day and time of advanced and modern banking methods for McFarlan to carry over and count out, in Klump's presence. thirteen thousand one hundred and sixteen dollars, and if it had been necessary in order to save McFarlan other expenses, to avail him his defense, to the accrual of additional expense, interest, and attorney's fee— it would have been useless, and have availed him nothing, for Klump exclaims "never again—I've been fooled long enough—you will have to settle with my lawyer." He was determined that his lawyer should have his fees. 38 Cyc., 134, P. C. says: "A formal tender is unnecessary if the party to whom performance is due fails or refuses to perform his part, similarly, a tender is waived where the

tender makes any declaration which amounts to a repudiation of the contract, or takes a position which would render a tender, so long as the position is maintained by him a vain and idle ceremony. *Ronaldson* v. *Puckett,* 48 So. 152; *Sonia Cotton Oil Company* v. *The Red River,* 106 La. 46, 30 So. 303, 87 Am. Rep. 293; *Wesling* v. *Noonan,* 31 Miss. 599, *supra.* In the case of *Collier* v. *White,* 67 Miss. 133, 6 So. 618, there was a dispute as to the amount of the indebtedness; in the instant case there was no dispute as to the amount of the indebtedness as to February 11, 1920. Defendant below could not recover less nor more on that day.

McFarlan offered to pay more than a check; he offered the money—that money that Klump himself had that day placed in the bank at Drew with his own check. It was held in *Rush* v. *Pearson,* 92 Miss. 153, 45 So. 723, it was necessary for Mr. Rush to tender into court or to pay same, before he could maintain his injunction. We submit that the money was paid into court in this case and with that contention the trial court agreed.

In this case the tender was kept good, it was offered to Dorman before the bill was filed, at the time it was filed, and was always subject to his acceptance—The case of *Smith* v. *Williams Brooke Company,* 71 So. 648, is in no respect a case similar to the instant case; in that case there was one little offer to pay, with no evidence supporting the testimony, and no evidence of a continuation of the offer to pay. And in that case it was not an equitable case arising between the original parties to the transaction. It is well settled in Mississippi that where equity is offered and continued to be offered that the tender is good. *Purvis* v. *Woodward,* 78 Miss. 266, 29 So. 917; *Crittenden* v. *Reagan,* 89 Miss. 185, 42 So. 281; *Lewis* v. *Bougechitto,* 76 Miss. 376, 24 So. 875.

It is submitted that there was an offer to pay, a willingness to pay, an offer of equity, before the notes were placed in the hands of an attorney, Doran, for collection and under *Purvis* v. *Woodward, Critten* v. *Reagan,* and *Smith*

v. *Williams Brooke Company* cases, *supra,* complainant below offered tender, did tender, and kept tender good so as to prevent the attachment of attorney's fee and other cost.

In conclusion, it is admitted that McFarlan assumed payment of the indebtedness in the deed of trust and was obligated to pay, and that the contract was fairly made by sane men, and that if after the note came into Klump's hand, and there had been no offer to pay made by Mc-Farlan, and Klump had placed them in the hands of his attorney without seeing McFarlan, or held the proven conversation with McFarlan, then the attorney's fee here in dispute would have attached, as well as subsequent interest after February 11, 1920, and also, subsequent cost, and the five per cent. statutory damages would have attached for the wrongful suing out of the injunction.

The members of this honorable court can readily understand that it is an embarrassing situation for one attorney to be placed in the attitude of seeking to prevent a fellow attorney from collecting, what in the mind of that attorney is a fee to which he is justly entitled, but to do justice to a client, such a situation prevails in this case, and in duty to his client the attorney here must carry on.

We submit that a tender was made sufficient in the eyes of the law under the circumstances of this case before the notes were placed in the hands of an attorney for collection, and that the tender was kept good, which contention was sustained by the able chancellor in the court below, and that the decision of the trial court should here be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a bill to enjoin the appellant as trustee from foreclosing a deed of trust given by one Klump to secure a certain indebtedness given by Klump to Kapland, which indebtedness was secured by a note and deed of trust, which was recorded in the county where the land

124 Miss.—52.

lay.  The note provided for attorney's fees 'in case the notes were placed in the hands of an attorney for collection.  On the same day that Klump gave the deed of trust to Kapland he sold the lands embraced in the deed of trust to McFarlan, with agreement and understanding embraced in the deed that McFarlan would assume and pay off the debt secured by the deed of trust.  The notes secured by the deed of trust matured on December 1, 1918, and December 1, 1919, and were for five thousand eight hundred dollars each.  The agreement in the deed assuming this indebtedness by McFarlan reads as follows:

"In consideration of the sum of five thousand one hundred and twenty-five dollars cash in hand paid me, the receipt of which is hereby acknowledged, and the assumption by the hereinafter named grantee of my indebtedness to Max Kapland as evidenced by two notes of even date herewith, each for the sum of five thousand eight hundred dollars and each of said notes bearing interest at the rate of six per cent. per annum from date until paid, with interest thereon being due and payable on December 1, 1918, and annually thereafter, said notes being due and payable December 1, 1918 and 1919, respectively; said notes being secured by a deed of trust of record in Sunflower county, Mississippi; and for the further consideration of the making and delivery to me by the hereinafter named grantee of his three promissory notes of even date herewith each for the sum of five thousand eight hundred dollars," etc.

The said land was conveyed by the said deed to McFarlan.  When the first note became due to Kapland McFarlan did not pay the note, but merely paid the interest thereon, and had some understanding with Kapland to defer the payment of the principal.  But Klump was not released by said agreement between Kapland and McFarlan.

When the second note was about to become due, Kapland notified Klump that the notes were due and unpaid, and demanded payment.  When this notice was received Klump made a demand of McFarland to pay off said notes,

which McFarlan was unable to do. But McFarlan arranged with another person to buy the notes and deed of trust from Kapland and hold for McFarlan, but not releasing Klump and not releasing the first lien in favor of Klump's second lien. Thereupon Klump demanded that said notes be paid off so that his notes would become a first lien upon the land in question. As it was not agreeable with the purchaser to take this course, Klump arranged with the holder of the notes and deed of trust to buy them and take an assignment, which was done. Thereupon Klump demanded of McFarlan the payment of the notes, which McFarlan stated he was unable to do. On the day this demand was made McFarland and the party he had arranged with to buy the notes made a trip together to Clarksdale, Miss., from Drew, Miss., and on this trip an agreement was reached between McFarlan and Mr. Manning, with whom he had arranged as above stated to buy and hold the notes, that Manning would furnish McFarlan the money with which to pay off the notes given to Kapland and permit Klump's deed of trust to become a first lien, and that Manning would take a second deed of trust to secure the money so advanced. After they returned to Drew on the afternoon of the same day, as McFarlan got off the train Klump got on the train, taking passage for Greenwood for the purpose of having the trustee collect the notes, and, if not paid, foreclose the Kapland deed of trust, in which deed of trust the appellant, who was an attorney, was trustee. McFarlan came to where Klump was on the train, and according to his version of the matter stated to Klump that he was ready to pay off the deeds of trust, and if he would disembark from the train and go over to the bank that he would get his money on the following day. Klump's version was that McFarlan merely stated to him that he was then ready to talk business with him if he would go over to the bank, and that he could pay him on the following morning, and that he stated that he had been fooled often enough and declined to go. McFarlan testified that he did not have the

money with which to pay the deeds of trust and notes, but that he had arranged with Manning to get the money and that Manning had the money in the bank. The evidence shows that this money was never placed to the credit of McFarlan, and was not paid into court until the final decree.

Klump proceeded to Greenwood, and turned the notes over to the appellant as an attorney for collection, with the instruction that if they were not paid to foreclose. The attorney sent a demand to McFarlan for the principal and interest, plus an attorney's fee of ten per cent. On receipt of this notice Manning sent a personal check or draft for the principal and interest, but declined to send the attorney's fee, claiming that he was due no attorney's fee.

On the evening that Klump turned the notes over to the attorney, and prior to the time of turning the notes over, McFarlan rang up the attorney, who was also trustee, and stated over the phone that he was ready to pay the notes. A second notice was sent, returning the drafts sent in the first letter by McFarlan, which had indorsed on them "Refuse to accept," and insisting upon an attorney's fee and threatened foreclosure if the amount was not paid promptly. When this letter was received McFarland's attorney sent another draft for the principal and interest, but without attorney's fees, urging the acceptance of the money, but stating that if it were not accepted they would enjoin. This draft was returned with letter refusing to accept it in full, and also declining it specifically upon the ground that it was not money. Thereupon the trustee, the appellant, proceeded to advertise the land embraced in the deed of trust for sale, and thereupon the appellee, McFarlan, sued out an injunction enjoining the sale. A motion was filed by the appellant to dissolve the injunction and claimed attorney's fees for collecting the note and attorney's fees for defending the injunction suit as damages, as well as the principal and interest to the date of the decree. The chancellor refused to dissolve the in-

junction and made the same perpetual, and directed the principal and interest to the 11th day of February, the date on which Mr. McFarlan stated to Mr. Klump that he was ready to pay the notes, etc., to be paid into court.

Two questions are presented by this record for decision: First, was the offer of McFarlan to pay under the circumstances stated a legal tender; and, second, was the appellant entitled to attorney's fees in addition to the principal and interest under the facts of this case.

It will be seen from the above statment that the plaintiff did not actually tender money on the train on the day in question, nor did he state that he was then and there ready to pay the amount. The proof shows on the contrary that he could not have immediately paid the money had Klump been willing then to receive it. The money had not been actually turned over to McFarlan, and there was no money to his credit at the bank with which to make the payment. His ability to make the payment depended upon Manning's giving him a check on the bank and the bank's honoring the check so given. McFarlan had stated on the very morning that he was unable to pay it, and Klump had made several trips to induce him to pay it without avail. We do not think that the proposition made on the train, accepting McFarlan's version of it, warranted the chancellor in holding that it was a legal tender of the money, and it was error to so hold.

On the second proposition we do not think under the facts disclosed by this record that the appellant was entitled to collect an attorney's fee. The agreement of McFarlan was to pay the indebtedness to Kapland, or the assignee of Kapland, for immediate payment, neither had they placed the note in the hands of an attorney for collection. On the contrary, they were willing to extend to McFarlan additional time without waiver of their rights. Klump had not paid out any attorney's fee when he repurchased the paper which was his own paper. McFarlan had not signed the paper nor become a party to the paper any further than to assume it in the language of the deed

above quoted. The proof shows that Mr. Klump could have collected the principal and interest by remaining over, and, while he was under no duty to remain over and return to the bank, he still could have collected the principal and interest had he made demand for that alone. He made demand for attorney's fees and in the foreclosure attempted would have claimed attorney's fees. Under these facts we do not think that the allowance of attorney's fees to Klump was necessary. We think the chancellor erred in the amount decreed for the complainant to pay in satisfaction of the deed of trust, and for this error the judgment will be reversed, and the cause remanded.

*Reversed and remanded.*